W. L. SUTTON AND WIFE, ANNIE FIELDS SUTTON, v. MABEL B. QUIN-
ERLY, CORA A. CRADDOCK, JOHN HICKSON AND WIFE, THELMA
JENKINS HICKSON; LOIS HICKSON SCOTT AND HUSBAND, K. D.
SCOTT; WILLIAM F. HICKSON AND WIFE, MARGARET COUCH HICK-
SON; EDWARD B. HICKSON, ROBERT W. HICKSON, PHILIP H.
HICKSON AND WIFE, WINAFRED ALLEN HICKSON; ANN HICKSON
BOWEN AND HUSBAND, HARRY BOWEN; JAMES F. HICKSON AND
RICHARD C. HICKSON, AND FRANCES FIELDS HOLLIDAY AND HUS-
BAND, JOSEPH W. HOLLIDAY.

(Filed 29 October, 1947.)

**1. Wills § 32—**

The presumption against partial intestacy has varying force according
to the circumstances of the particular case, but in no event can it justify
the court in making a will for testator.

**2. Same—**

The presumption against partial intestacy applies with particular force
as to lands which testator undertakes to dispose of and selects the objects
of his bounty.

**3. Wills § 34—**

Testator devised certain lands to his daughter for life with limitation
over to her child or children if she should marry and bear children, but
"if she does not marry" then to her brother or sisters who may survive
her. *Held:* The limitation over to brother and sisters of the first taker
is not defeated by her subsequent marriage, it being the obvious intent of
the testator that the limitation over to them should take effect in the
event the first taker dies without child or children of her marriage surviv-
ing her.

**4. Wills § 33c—**

Where there is devise to testator's daughter with limitation over to her
children, and in the event of failure of such children then to the brother
and sisters of the first taker who should survive her, those who take the
contingent limitation over must be ascertained as of the date of the death
of the first taker.

DEFENDANTS' (except Mabel B. Quinerly and Cora A. Craddock) ap-
peal from *Hamilton, Special Judge,* at September Term, 1947, of LENOIR.

*John G. Dawson for plaintiffs, appellees.*
*Whitaker & Jeffress for Cora A. Craddock, defendant, appellee.*
*William A. Allen, Jr., and Allen & Allen for defendants, appellants.*

SEAWELL, J. The proceeding under review was instituted before the
Clerk of the Superior Court for a twofold purpose: To obtain a court
construction of the will of W. C. Fields, deceased, with respect to the
devise in paragraph 5 thereof; and secure an order of sale for certain

property therein described. The jurisdiction of the Clerk on matters of construction is not in question, since final action was in the Superior Court before the Judge.

The case went up to the Superior Court on an appeal from the Clerk, the objection being to his construction of the controversial paragraph hereafter quoted, and the judgment was there affirmed. It comes here on appeal by defendants other than Mabel B. Quinerly and Cora A. Craddock, to whom the result was favorable,—the appellants directing their objection and exceptions solely to that part of the judgment adversely construing the devise under paragraph 5. As to the sale of the land as provided for in the judgment, all the parties are agreed and further reference thereto will not be necessary.

The paragraph of the will concerned with the controversy reads as follows:

> "Item 5th: I loan to my daughter Annie C. Fields, the following lots and lands: The lot on which stands the 'Farmers Warehouse'— corner of Heritage and Gordon Streets—being about 110 x 190 feet —The lot on which Geo. Herring now lives adjoining the lot of H. D. Spain—(on Queen Street—)and the lot now occupied by J. A. Long—being about 55 or 60 feet front by 210 deep. The vacant lot next to the lot in which Tom Cox now lives on East side of Independence Street, between Washington and Lenoir Streets— being about 60 x 200 feet. The vacant square or lot on west side of W. & W. Rail Road, about 132 x 265 feet adjoining lots formerly beyonged to L. Harvey on the west & Mrs. Lillian Perry on the south and the W. & W. Rail Road on the east—The tract of land— about 350 acres in Vance Township—known as 'Moore Dale' on which Josh Mewborn now lives, during the term of her natural life and, after her death, if she shall have married and borne children (or a child) by such marriage, I give, devise and bequeath said lands—and lots to such child or children—and, if she does not marry, I give, devise and bequeath said lots and lands to her brother or sisters who may survive her to them, their heirs and assigns."

Since the death of the testator, Annie Fields, holder of the life estate, married W. L. Sutton and these two are plaintiffs in the action. W. C. Fields, Jr., has since died.

The judgment challenged by the appellants concludes and declares that upon the death of Annie Fields Sutton, without children, the property devised in the quoted paragraph of the will will go under the terms thereof to Mrs. Quinerly or Mrs. Craddock, or both, according as either or both may survive the life tenant, and contingent upon such survival.

The appellants take a strict and literal view of the contingency as expressed in the will, "If she [Annie] does not marry,"—contending that the sole contingency upon which the appellees could succeed to the remainder under the devise having already transpired adversely to their interest, W. C. Fields died intestate and without further provision as to the said remainder and it must, therefore, descend under the statute to his heirs general, *per stirpes*.

The appellees contend that it was the purpose of the testator to devise the property to such of the brother and sisters who might survive Annie in case she had no children, to the exclusion of other heirs who might take as representatives of deceased ancestors; and to arrive at the true meaning it is necessary and competent to read into the will (simply as an explanatory device) after the words, "does not marry," a clause reading, "or leave a child or children surviving her," in which event the remainder would go to such member or members of the designated group as might survive Annie. Favoring that construction they call to our attention the presumption against intestacy, and particularly against partial intestacy. *Ferguson v. Ferguson,* 225 N. C., 375, 377, 378, 35 S. E. (2d), 231; *Holland v. Smith,* 224 N. C., 255, 257, 29 S. E. (2d), 888; *Trust Co. v. Miller,* 223 N. C., 1, 4, 25 S. E. (2d), 177; *Coddington v. Stone,* 217 N. C., 714, 720, 9 S. E. (2d), 420; *Austin v. Austin,* 160 N. C., 367, 369, 76 S. E., 272; 69 C. J., p. 91, see *id.,* note 83, especially N. C. Citations on p. 93; Page on Wills, Sec. 926.

The presumption that the testator, having undertaken to make a will, intended to make a complete disposition of his property is of varying force, according to the circumstances of the particular case, and cannot, of course, justify the Court in making a will for the testator. Where the estate is large, the beneficiaries numerous, some *in esse* and others prospective, and the adjustments complex, we can conceive that the presumption may not be so impelling. But once the mind of the testator has penetrated to that point and has actually dealt with the item and chosen the objects of his bounty upon an expressed contingency, it would be singular if he should permit defeat of the testamentary disposition, abandon the pursuit, or leave the property undisposed of upon the failure of some other irrelevant contingency, also mentioned.

Of what significance then is the expression "if she shall not marry" used in parallel construction with the expression "if she shall have married and borne children (or a child) by such marriage," which immediately precedes it in the will? We think a reasonable construction would be that in the expression "if she does not marry" the testator intended to state the converse or reverse of the contingency he first stated *in its entirety,* substituting for the fuller expression the words "if she shall not marry," which meant to him that she would not have children surviving

her if she did not marry. Such a construction brings into logical relation the provisions as to the disposition of this property and the reasonableness of the phrase "if she does not marry" in this relation, which would otherwise be wanting. It puts the appellees and the appellants on different sides of the same contingent event; the children of Annie to take if any survived her; if she had none surviving her, such of the brother and sisters as might survive her to take. Mrs. Quinerly and Mrs. Craddock now survive; but the roll is to be called at the death of Mrs. Sutton. We are confirmed in this opinion since otherwise, as above suggested, the mere fact of Annie's marriage or non-marriage would be an arbitrary contingency, no more related to the scheme of disposition and the natural provision and care for the chosen objects of testator's bounty than if the contingency had been predicated on the event of the next Democratic Convention being held in Chicago or Byrd's safe return from the Antarctic. *Desmartean v. Fortain,* 326 Ill., 608, 158 N. E., 444. We cannot see how the bare fact of Annie's marriage could have been important to the testator except as it bore on the possibility of having children who might survive her.

In our opinion the court below correctly construed the devise, and the judgment is

Affirmed.